In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2485

TERENCE L. JANNKE,

*Petitioner-Appellant*,

*v.*

MICHAEL GIERACH,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 22-cv-00315 — **James D. Peterson**, *Chief Judge*.

ARGUED SEPTEMBER 22, 2025 — DECIDED NOVEMBER 17, 2025

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Terence Jannke is incarcerated in Wisconsin state prison for selling H.N.[1] heroin that killed her. Jannke filed a habeas petition in the Western District of Wisconsin, raising an ineffective assistance of counsel claim. But Jannke failed to exhaust his claim at each level of the

---

[1] We refer to the victim by her initials H.N.

Wisconsin judiciary before seeking federal habeas relief. The district court dismissed Jannke's petition, finding he had procedurally defaulted his claim. We affirm.

## I. Background

In late May 2016, Jannke, a heroin dealer in Dodge County, Wisconsin, met H.N. and her friend, Gabriel Brandl, in a park and sold them heroin. Jannke, Brandl, and H.N. then got into a car, where Brandl, after taking heroin himself, injected H.N. with the heroin. Soon after, H.N. fell unconscious in the back seat of the car. For the next few hours, Brandl and Jannke drove around the area with H.N. still unconscious. The group then stopped at Jannke's house, where, with H.N. still unconscious in the back seat, Brandl and Jannke went into the house and took more heroin.

Later that night, Brandl left Jannke's house, got in his car with H.N. in the backseat, drove for a while, and then realized H.N. had stopped breathing. He returned to Jannke's house and told Jannke H.N. had died. Jannke told Brandl to come up with a story that did not implicate Jannke and instructed Brandl to delete Jannke's phone records from H.N.'s phone. Brandl left Jannke's house and, after driving for some time, took H.N. to the hospital where she was pronounced dead.

The next day, the police questioned Brandl. While he initially told the police the story he and Jannke had come up with, he soon changed his story and told the police that Jannke sold them heroin, he injected H.N. with it, H.N. quickly passed out, later at night he realized she had stopped breathing, and he took her to the hospital. A month later, law enforcement arrested Jannke.

The State charged Jannke with three counts: (i) first-degree reckless homicide for selling H.N. the heroin on which she overdosed; (ii) maintaining a drug trafficking place; and (iii) possession with intent to deliver less than three grams of heroin. Only the first-degree reckless homicide count is relevant on appeal.

**A. Trial**

Jannke proceeded to trial. The State's primary witness was Brandl, who described the events leading up to and after H.N.'s death. Brandl testified that Jannke sold H.N. the heroin and that she overdosed after taking it. The State also called other corroborating witnesses and the county medical examiner, Dr. Kristinza Giese, who conducted an autopsy of H.N. Dr. Giese testified that H.N. would not have died had she not taken heroin. Finally, the State showed the jury deleted text messages between Jannke and H.N. which suggested H.N. had asked Jannke for heroin.

Jannke's only witness was Dr. Richard Tovar, a toxicology expert who responded to Dr. Giese's medical report and testimony.

At the end of trial, the jury convicted Jannke on all three counts. On January 8, 2018, the court sentenced Jannke to twenty years in prison and ten years' supervised released.

**B. State Post-conviction Proceedings**

Jannke first moved for post-conviction relief in the trial court. Jannke then appealed to the Wisconsin Court of Appeals, bringing an ineffective assistance of counsel claim and arguing his trial counsel's performance was constitutionally deficient. Jannke's appointed appellate counsel, Michael Covey, filed a "no-merit" report, Wis. R. Civ. App. P.

809.32(1), which explained that there was sufficient evidence to convict Jannke, his sentence was not unreasonable, and his trial counsel had been effective. Jannke contested Covey's report, arguing his trial counsel had been ineffective, and Covey filed a supplemental response, expanding on his conclusion that Jannke's trial counsel was effective.

On March 11, 2021, the Wisconsin Court of Appeals affirmed Jannke's conviction. It applied *Strickland v. Washington*, 466 U.S. 668 (1984), and found, based on Covey's no-merit reports, that trial counsel's performance was not deficient.

Following this decision, Jannke had thirty days to petition the Wisconsin Supreme Court for review. Wis. Stat. §§ 808.10, 809.62. This meant his petition was due April 12, 2021.[2] But Jannke's petition arrived on April 19 and was dated April 14. The Wisconsin Supreme Court dismissed Jannke's petition as untimely and denied his motion for reconsideration.

### C. Federal Habeas Proceedings

Roughly a year later, on June 1, 2022, Jannke filed a federal habeas petition in the Western District of Wisconsin. In his petition, he argued there was insufficient evidence to support his conviction and, relevant on appeal, he had received ineffective assistance of counsel at trial. To explain why he had not exhausted all available state court remedies, Jannke wrote that he "was given the wrong [filing] date from [the] Red Granite correct[ional] [sic] institution Law clerk and the Petition to the Wisconsin Supreme Court was deemed untimely."

---

[2] Because thirty days from March 11 fell on a Saturday, Wisconsin Supreme Court rules extended the deadline to April 12, the Monday after.

On August 10, 2022, the district court ordered Jannke to show cause why it should excuse his procedural default for failing to exhaust all available state court remedies before filing his federal habeas petition.

Jannke responded to the district court's order, primarily explaining why he was actually innocent—one way a habeas petitioner can excuse procedural default. But Jannke also briefly expanded on the filing date issue. He explained that at Redgranite Correctional Institution, where he is incarcerated, inmates generally have limited access to the law library. To get guaranteed access, an inmate must submit the final decision of the Wisconsin Court of Appeals to the facility's law librarian, a state employee, who calculates the inmate's filing date. Jannke explained that "[t]his is to avoid deadline mistakes frequently made by inmates and to give only those inmates with deadlines the use of the law library's extra time to prepare." In Jannke's case, he said the librarian miscalculated his date as the librarian said his filing deadline was April 16 rather than April 12. To support this argument, Jannke included his library access schedule for the week of April 12, which shows the miscalculated date and that his access for that week started on the evening of April 12, the day his petition was due. But Jannke provided no evidence of his access (or lack of access) for the weeks leading up to the deadline for his petition.

The district court dismissed Jannke's habeas petition and denied a certificate of appealability. The court found that Jannke had procedurally defaulted his habeas petition and that he had not made the requisite showing to excuse procedural default.

We granted Jannke a certificate of appealability, finding he "ha[d] made a substantial showing of the denial of his right to effective assistance of trial counsel." We also appointed Jannke appellate counsel and asked the parties to address the "antecedent procedural question" of whether "the asserted miscalculation [of Jannke's filing date to the Wisconsin Supreme Court by the law librarian] prejudiced Jannke and counts as an event 'external to the defense' that establishes cause for procedural default."

## II. Discussion

We review "a district court's denial of a habeas petition *de novo*." *Maier v. Smith*, 912 F.3d 1064, 1069 (7th Cir. 2019). Likewise, we review "questions of procedural default de novo." *Garcia v. Cromwell*, 28 F.4th 764, 771 (7th Cir. 2022).

We start, and in this case end, with procedural default.

Through 28 U.S.C. § 2254, Congress authorized "federal courts to issue habeas corpus relief for persons in state custody." *Pierce v. Vanihel*, 93 F.4th 1036, 1044 (7th Cir. 2024). But to seek federal habeas relief, a state prisoner must first "exhaust[] the remedies available in the courts of the State." § 2254(b)(1)(A); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means the state prisoner must present his claim at each level of the state court system before seeking federal relief. *See Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004). A habeas petitioner who fails to do so procedurally defaults his claim. *See Wilson v. Cromwell*, 69 F.4th 410, 418 (7th Cir. 2023) (quoting *Davila v. Davis*, 582

U.S. 521, 527 (2017)); *see also Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

A petitioner who has procedurally defaulted federal habeas relief may excuse the default by demonstrating "both cause for and prejudice stemming from that default …." *Lewis*, 390 F.3d at 1026 (first citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977); and then citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *see also Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010). Cause "is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F.3d at 1026 (citing *Murray*, 477 U.S. at 488); *see also Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003). "This normally means [a] petitioner must 'show[ ] that the factual or legal basis for a claim was not reasonably available,' or 'that some interference by officials[ ] … made compliance impracticable.'" *Love v. Vanihel*, 73 F.4th 439, 447 (7th Cir. 2023) (citation modified) (quoting *Murray*, 477 U.S. at 488). And "[p]rejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage ….'" *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022).

Jannke procedurally defaulted his claim when he failed to file his petition for review before the deadline and the Wisconsin Supreme Court dismissed it as untimely. Before the district court, Jannke argued the court should excuse his procedural default because the Redgranite law librarian miscalculated his filing date, which caused him to miss the deadline. On appeal, however, Jannke's argument has shifted. Now he argues it is not his reliance on the miscalculated date that

establishes cause, but rather that a prisoner at Redgranite cannot access the law library in a meaningful way until the law librarian calculates the prisoner's filing deadline and schedules his access accordingly. So, Jannke says, because the librarian miscalculated his filing deadline, he could not meaningfully access the law library until the evening his petition for review was due, which prevented him from preparing his petition and filing it on time.

First, we address whether to limit Jannke's argument to the one he advanced below. Second, we address whether Jannke has shown cause to excuse his procedural default.

**A. Preservation**

In general, we "do not consider issues raised for the first time on appeal." *Henry v. Hulett*, 969 F.3d 769, 785 (7th Cir. 2020) (en banc). A rule that is equally true for habeas petitions. *See Love*, 73 F.4th at 449. The petitioner either waives or forfeits such arguments. *Compare Santiago v. Streeval*, 36 F.4th 700, 710 (7th Cir. 2022) ("An argument not raised in the habeas petition or in briefing before the district court is waived on appeal."), *with Frazier v. Varga*, 843 F.3d 258, 262 (7th Cir. 2016) ("[I]f an argument was not presented to the federal district court, it is forfeited in this court."). But even if forfeited rather than waived, in civil cases, "we typically will not entertain an argument raised for the first time on appeal .…" *Hulett*, 969 F.3d at 786 (quoting *CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.*, 882 F.3d 692, 705 (7th Cir. 2018)) (explaining we "typically" will not consider a forfeited argument in civil cases, even for plain error purposes).

Jannke did not preserve his argument—that he could not meaningfully access the law library until the day his

application was due because the law librarian miscalculated his filing deadline and set his access accordingly—because he did not advance it below. This is true even when liberally construing his district court filings, as we do for pro se petitioners. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010).

Jannke's habeas petition said only that he "was given the wrong date from [the] Red Granite correct[ional] [sic] institution Law clerk and the Petition to the Wisconsin Supreme Court was deemed untimely." Responding to the district court's show cause order, Jannke explained generally why the law librarian calculates filing dates and added that "the state employee miscalculated [his] deadline …." Though the "general issue" of Jannke's late filing was before the district court, he did not advance the "specific argument" of his lack of library access and may not now "for the first time on appeal." *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (quoting *Domka v. Portage County*, 523 F.3d 776, 783 (7th Cir. 2008)); *see also Seats v. Nurse*, 152 F.4th 874, 881–82 (7th Cir. 2025).

"Even liberally construing" Jannke's district court filings, he did not raise an argument "resembling [the one] he now offers." *Love*, 73 F.4th at 449. Establishing cause based on reliance on the librarian's miscalculation is "separate and independent" from establishing cause based on an inability to access the law library. *See McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018) (finding arguments not raised in habeas petition waived, even "when liberally construed"). True, Jannke explained the Redgranite library access policy generally. But Jannke failed to describe his own access in the month he had to file his application for review. He alleged no facts detailing whether he was able to access the library before his

application was due, for how many hours he was in the library, whether the librarian prevented him from accessing the library, or whether he even *tried* to access the library. These failures are fatal to Jannke's library access argument. "Our liberal construction of the *pro se* [filings] cannot stretch" his miscalculation argument into a library access argument, particularly where the only evidence Jannke provided "make[s] clear that the claim [Jannke] asserts" was about the miscalculation—a conclusion underscored by "[t]he district court's analysis." *Frazier*, 843 F.3d at 264. "Simply referring to [library access] … is not enough to preserve the [] issue for review in this court." *Pole*, 570 F.3d at 937.

We therefore limit Jannke's argument to the one he advanced in the district court.

**B. Cause**

We have said that the relevant question is whether the claimed cause to excuse procedural default is "'something that cannot fairly be attributed to' the petitioner." *Johnson v. Foster*, 786 F.3d 501, 506 (7th Cir. 2015) (quoting *Coleman*, 501 U.S. at 753). That is, cause may exist where there is "interference by state officials that makes compliance with a procedural rule 'impracticable.'" *Johnson*, 786 F.3d at 506 (quoting *Murray*, 477 U.S. at 488).

A petitioner's ignorance of filing deadlines does not establish cause. *See Harris*, 334 F.3d at 669 ("Something that comes from a source within the petitioner is unlikely to qualify as an external impediment."). Nor can reliance on the law librarian's miscalculation. Jannke is not entitled to post-conviction counsel or legal advice, *Pettis v. United States*, 129 F.4th 1057, 1063 (7th Cir. 2025), and the miscalculation was not an

"external impediment to compliance with the state court's procedural requirements," *Johnson*, 786 F.3d at 510. Though the librarian miscalculated his deadline, Jannke was still capable of calculating the deadline himself. *See Henderson v. Cohn*, 919 F.2d 1270, 1273 (7th Cir. 1990). As such, the miscalculation "did not impede [Jannke's] ability to file a petition for review in a concrete sense or otherwise make compliance with the state's procedural rules 'impracticable.'" *Johnson*, 786 F.3d at 507–08 (finding no cause where habeas petitioner claimed prison business office denied petitioner a legal loan to cover cost of filing petition, even if "the Business Office misinterpreted or misapplied the loan-eligibility regulation and policy"). Indeed, Jannke was not powerless to correct the mistake nor was he entitled to simply rely on the librarian's calculation. *See Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("Negligence on the part of a prisoner's post-conviction attorney does not qualify as 'cause.'" (quoting *Coleman*, 501 U.S. at 753)); *Booker v. Baker*, 74 F.4th 889, 894 (7th Cir. 2023) (finding no cause to excuse procedural default where post-conviction counsel erred because there is no right to post-conviction counsel); *Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir. 1997) ("[P]etitioner asserts, as cause for his default, that the state deliberately interfered with his right to access the courts by providing misleading legal advice. Petitioner was not entitled to assistance of counsel in his postconviction proceeding. Any failure to assist petitioner in this regard would therefore not amount to a violation of constitutional magnitude and, as such, cannot provide the cause necessary to excuse petitioner's procedural default." (citing *Pennsylvania v. Finley,* 481 U.S. 551, 558 (1987))).

As Jannke has not shown cause to excuse procedural default, we do not need to go further. *See Booker*, 74 F.4th at 894.

And because Jannke cannot excuse his procedural default, we "do not reach the merits" of his ineffective assistance of counsel claim. *Wilson*, 69 F.4th at 425.

*     *     *

The judgment of the district court is

AFFIRMED.